

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ROBBYE R. WALDRON, PLAN TRUSTEE FOR AMERICAN INTERNATIONAL PETROLEUM CORPORATION<br>**Appellant and Plaintiff** | : | DOCKET NO. 2:11-CV-074 |
| VS. | : | JUDGE TRIMBLE |
| ADAMS AND REESE, LLP<br>**Appellee and Defendant** | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING AND ORDER

Before the court is an appeal from the Bankruptcy Court's findings of fact and conclusions of law. Plaintiff, Robbye W. Waldron, Trustee for American International Petroleum Corporation ("AIPC") appeals the Bankruptcy Court's ruling which found that defendant, Adams and Reese, LLP ("A&R") the former counsel for the debtors-in-possession, American International Refinery, Inc. ("AIRI") and AIPC (1) did not have a disqualifying interest or conflict, or breach of its duties to the estate, (3) failed to disclose sufficient information about A&R's pre-petition contact with the debtors or GCA, (4) such failure to disclose was not intentional, (5) full disgorgement was not an appropriate remedy, (6) there was no evidence of prejudice by any actions taken by A&R, and (7) A&R must disgorge $135,000 of the fees it was awarded as counsel for the debtors. The Trustee also appeals the court's denial of a motion to amend the complaint.

## STATEMENT OF THE CASE

This is an appeal of an adversary proceeding in the Bankruptcy Court initiated by the Liquidating Trustee ("Trustee") of the AIPC Liquidating Trust against Adams & Reese, LLP, the

former counsel for the debtors-in-possession, AIRI and AIPC. In the Bankruptcy Court, the Trustee, Robbye Waldron, sought disgorgement of attorney fees awarded to A&R and additional damages based on claims that A&R failed to disclose that it had a disqualifying conflict of interest at the time it was retained arising from its pre-petition connections to the debtors and one of the largest creditors of the estate, GCA Strategic Investment Fund Limited ("GCA").

The Trustee asserts the following assignments of error with respect to the Bankruptcy Court's rulings:

(1) Whether the Bankruptcy Court erred in holding Adams and Reese, LLP did not hold or represent an adverse interest to the bankruptcy estate by receiving Two Hundred Thousand Dollars ($200,000.00) from the debtor's largest creditor, GCA.

(2) Whether the Bankruptcy Court erred in holding Adams and Reese LLP was disinterested in light of its connections to and relationships with GCA.

(3) Whether the Bankruptcy Court erred in holding Adams and Reese, LLP was disinterested in light of it advising the Debtor to mischaracterize pre-petition payments to officers and directors.

(4) Whether the Bankruptcy Court erred in limiting the disgorgement to the amount of One Hundred Thirty-Five Thousand Dollars ($135,000.00).

(5) Whether the Bankruptcy Court erred in denying leave to the Trustee to amend his complaint to add claims for fraud, fraudulent inducement and conspiracy.

## STANDARD OF REVIEW

We review the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*.[1] Clear error review is "especially rigorous" when we review a lower court's assessment

---

[1] Nesco Acceptance Corp. v. Jay (In re Jay), 432 F.3d 323, 325 (5th Cir. 2005).

of trial testimony, "because the trier of fact has seen and judged the witnesses."[2]

## LAW AND ANALYSIS

The Trustee in this disgorgement case was appointed under a confirmed plan of reorganization. As such, he sought disgorgement of compensation received by A&R for failure to adequately disclose its connections to the debtor, its affiliates and GCA, the largest creditor. In addition, and/or alternatively, the Trustee sought disgorgement of A&R's compensation because the defendant was not disinterested.

**I. Did the Bankruptcy Court err in holding Adams and Reese, LLP did not hold or represent an adverse interest to the bankruptcy estate by receiving Two Hundred Thousand Dollars ($200,000.00) from the debtor's largest creditor, GCA.**

AIRI and AIPC filed petitions under Chapter 11; the two cases were jointly administered.[3] AIPC was a publicly-held corporation which carried on its operations through wholly-owned subsidiaries. AIPC's wholly-owned subsidiaries included AIRI, St. Marks Refinery, Inc. ("SMR") and American International Petroleum Kazakhstan ("AIPK"). AIPC also owned 15% of the stock in CGC. AIPK was formed to hold assets related to AIPC's exploration and development activities in Kazakhstan; its primary asset was License 1551, a gas concession in Kazakhstan, and 95% of the outstanding shares of Too Med Shipping Usturt Petroleum Limited ("MSUP"), which owns 100% of License 953, another gas concession.

A&R had previously represented AIPC in regulatory, corporate and general litigation matters. On February 17, 2004, AIPC retained A&R to represent both AIRI and AIPC in its

---

[2] United States v. Casteneda, 951 F.2d 44, 48 (5th Cir. 1992).

[3] None of AIPC's subsidiaries filed for relief.

3

restructuring negotiations. The next day, A&R received a small retainer from AIPK to review problems for the related companies. By March, 2004, AIPC and AIRI began to discuss a restructuring plan with A&R. After payment of the June 2004 statement, the retainers paid to A&R were exhausted. In October 2004, Halifax, AIRI's major creditor filed a notice of foreclosure in New York forcing AIRI and AIPC to file bankruptcy to stop the foreclosure.

Finding itself without funds to pay A&R its current fees or a Chapter 11 retainer, AIPC management sought a source to pay the retainer. On October 4, 2004, GCA, a creditor of AIPC entered into an agreement with SMR, AIPC's subsidiary, whereby GCA loaned SMR $200,000.00 in exchange for a security interest in the proceeds of the sale of real estate owned by SMR in Florida. SMR and AIPC adopted corporate resolutions stating that SMR desired to reduce the amount of inter-company debt, and AIPC directed SMR to pay the loan proceeds to A&R. On October 4, 2004, A&R received the $200,000 in a wire transfer. Thus, GCA, AIPC's largest creditor indirectly funded the bankruptcy retainer paid to A&R. A&R failed to disclose this transaction in its Disclosure of Compensation or Application filed with the Bankruptcy Court.

Prior to the October 2004 filing of bankruptcy, AIPC and GCA negotiated a "Pre-Petition Agreement" or lock-up agreement which committed GCA to vote in favor of the debtors' plan of reorganization as long as the plan provided the treatment of GCA's claim as set forth in the agreement. Ultimately, following litigation with respect to GCA's security interest, GCA and the Equity Security Holders Committee ("Equity Committee")[4] reached a settlement agreement –not based on the lock-up agreement.

---

[4] The Equity Committee was appointed by the United States Trustee on July 13, 2005 and was comprised of three (3) representatives of the unsecured creditor class and two (2) representatives of the equity (stockholder) class.

4

A&R was approved by the court as the Debtors' counsel. Through court orders, A&R was awarded $678,936.25 in attorneys fees and $63,100.67 for out-of-pocket expenses.

The Trustee maintains that A&R was not "disinterested" as required by the Bankruptcy Code.[5] Disinterested is defined to mean, "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the debtor, or for any other reason."[6] The Trustee takes issue with the Bankruptcy Court's analysis and rejection of the *per se* approach wherein a debtor's counsel whose retainer or fees are funded by a creditor is *per se* disqualified from representing the debtor in possession. Instead, the court adopted a four factor test fashioned by the bankruptcy court in In re Missouri Mining, Inc.[7], wherein the court expressly rejected the *per se* disqualification of counsel and applied four factors in analyzing the facts. The Trustee argues that in order for the Bankruptcy Court to apply the four factor test in Missouri Mining, A&R must have first adequately disclosed the source of its funding, which it did not do.

A&R first notes that the Bankruptcy Court found that the disclosure error was unintentional. A&R then argues that in dealing with conflicts or material adverse interests, the courts determine on a case-by-case basis a fact-specific analysis, and any sanction or remedy is also determined on a case-by-case basis. See In re West Delta Oil Co.,Inc.[8] [9] The court finds that the four factor

---

[5] 11 U.S.C. § 327(a).

[6] 11 U.S.C. § 101(14).

[7] 186 B.R. 946, 948 (Bankr.W.D. Mo. 1995).

[8] 432 F.3d 347 (5th Cir. 2005)("There are compelling reasons for denying all fees when a conflict of interest is present. Nevertheless, because the bankruptcy court is a court of equity, the bankruptcy judge should not be bound by a completely inflexible rule mandating denial of all

approach on a case-by-case basis instead of the *per se* approach is not legal error by the Bankruptcy Judge.

The four factors considered by the bankruptcy court include (1) whether the payment caused injury to the estate, (2) whether the payment prejudiced other creditors, (3) whether the creditor who paid the fees received "any specific advantage" and (4) whether an actual conflict arising from the payment is apparent.[10] The Bankruptcy Judge ruled as follows:

> Whether or not a fee arrangement creates a disqualifying interest or conflict requires scrutiny of the arrangement and consideration of the factors identified in Missouri Mining.
>
> In the present case, the Debtors negotiated the funding for Adams and Reese's retainer with CGA [sic] because the Debtors did not have the funds to pay the retainer. Under the terms of the agreement, GCA loaned $200,000 to St. Mark's Refinery – a non-debtor affiliate of AIPC – in exchange for a security interest in proceeds obtained from the sale of certain real estate owned by St. Mark's. GCA forwarded the funds directly to Adams & Reese at the direction of St. Mark's. Viewing the transaction in its entirety and applying the Missouri Mining factors, the court concludes that GCA's funding of Adams & Reese's retainer did not create a disqualifying interest or conflict. Adams & Reese was not a party to the transaction between GCA and St. Mark's, nor is there any evidence in the record that Adams & Reese agreed to represent GCA or provide GCA with anything in return for the payment. Nor is there any evidence that GCA agreed to fund future fees and expenses, which undercuts the Trustee's contention that Adams & Reese had an incentive to favor GCA's interests to ensure that the remainder of its fees would be paid. Moreover, the record supports Adams & Reese's contention that it never

---

fees in all cases. The general rule should be that all fees are denied when a conflict is present, but the court should have the ability to deviate from that rule in those cases where the need for attorney discipline is outweighed by the equities of the case.").

[9] See also Rome v. Braunstein, 19 F.3d 54 (1st Cir. 1994); Frischhertz Constr. Co., 2007 WL 2460998 *3 (Bankr. E.d. La. 2007); In re Leslie Fay Co., Inc. 175 B.R. 525, 532 (Bankr.S.D.N.Y. 1995); In Re Granite Partners, L.P., 219 B.R. 22 (Bankr. S.D.N.Y. 1998); In re El Comandante Management Co., LLC, 395 B.R. 807, 817 (D.P.R. 2008); In Re Crivello, 134 F.3d 831 (7th Cir. 1998); In re Martin, 817 F.2d 175 (1st Cir. 1987); In re AFI Holding, Inc., 530 F.3d 832; In re Harold & Williams Dev. Co., 977 F.2d 906, 909-10 (4th Cir. 1992).

[10] Memorandum Ruling citing In re Missouri Mining, Inc., 186 B.R. at 949.

6

requested payment of its fees from GCA, and that the decision to fund the retainer through a loan from GCA was made by the Debtors. The cases where courts have found disqualifying conflicts have predominately [sic] been cases where the pre-petition connection between debtor's counsel and a creditor called into question whether counsel was "serving two masters." The circumstances surrounding the GCA loan and the payment of Adams & Reese's retainer do not rise to this level. Finally, there is no evidence that the Debtors' arrangement with GCA harmed the estate or prejudiced other creditors. In the end, the problem for Adams & Reese is not that GCA funded its retainer, it is Adams & Reese's failure to disclose the source of its retainer as required by Rule 2014(a) of the Federal Bankruptcy Rules.... [t]his violation of Rule 2014(a) provides independent grounds for sanctions. It does not, however, support a finding that Adams & Reese had a disqualifying interest or conflict. (Citations omitted)[11]

The Trustee maintains that the Bankruptcy Court reached three erroneous factual determinations. Allegedly, the court erroneously held that:

(1) there was no evidence in the record that A&R agreed to represent GCA or provide GCA anything in return for payment.

(2) the record supports A&R's contention that it never requested payment of its fees from GCA.

(3) there was no evidence that the Debtor's arrangement with GCA harmed the estate or prejudiced other creditors.

The Trustee remarks that Dean Ferguson, A&R's lead counsel knew that there was an agreement with A&R for the $200,000 to file a plan acceptable to GCA. The Trustee relies on an email authored by Mr. Ferguson and sent to Denis Fitzpatrick, the debtor's CEO, dated April 21, 2006 wherein he wrote, "I don't know if anyone at AR remembers we are bound under the terms of the pre-petition agreement (the document permitted among other things, A&R to get paid over $200 thousand from GCA on the eve of filing) to file a plan ACCEPTABLE TO GCA.[12]

---

[11] Memorandum Ruling, p. 17.

[12] R. #12-17, P. 18.

("Plan") conditioned upon the Plan providing treatment to GCA consistent with the proposed agreement. The Plan was the result of a collective effort by Mr. Ferguson (counsel for A&R), and Mr. Edwards (in-house counsel for GCA). A&R argues that the Trustee's argument is illogical or at odds with routine bankruptcy practice wherein such agreements are common in bankruptcy reorganization cases. The Bankruptcy Judge addressed this issue expressly stating that "it is not unusual for a debtor to negotiate plan terms with its largest creditor. Indeed, such negotiations may be the only path to a confirmable plan."[12] The court finds no error as to the Bankruptcy Judge's finding that there was no evidence in the record that A&R agreed to represent GCA or provide GCA anything in return for the payment.

Next, the Trustee complains that the Bankruptcy Court found that the record supported A&R's contention that it never requested payment of its fees from GCA. The Trustee directs the court to e-mails by and between A&R personnel allegedly disclosing that Mr. Ferguson requested fees from GCA during the course of the case referring to P-17.[13] The email strings dated December 27, 2005, between Mr. Ferguson (A&R counsel), Nancy Jones (unknown by the court), and Robin Cheatham (A&R local counsel) appears to be a discussion wherein Mr. Ferguson states that he had placed a call to "Lou" and requested additional funds. The discussion was prompted by an earlier email wherein Ms. Jones had spoken to Dean who said, "something about only being able to pull whatev [sic] money is in our trust account (about $79,000 I think). If you were thinking of something different (e.g., GCA paying our fees), you may want to follow-up with Dean."[14] This

---

[12] Memorandum Ruling, p. 23.

[13] R. #12-17.

[14] Id.

8

something different (e.g., GCA paying our fees), you may want to follow-up with Dean."[15] This email string, without more does not persuade us that the Bankruptcy Court made a factual error when it determined that the record did not support the position of the Trustee that A&R requested payment of its fees from GCA.

Finally, the Trustee maintains that the Bankruptcy Court erred in finding there was no evidence that the Debtor's arrangement with GCA harmed the estate or prejudiced other creditors. Specifically, the Trustee complains that A&R took no action to challenge the validity of GCA's Secured Claim, A&R took actions to prepare and backdate a security instrument in favor of GCA and initiated a legal strategy favoring GCA over the interests of the estate. The Bankruptcy Judge accepted A&R's position that, "negotiations with GCA over the treatment of its claim were not the result of bias toward GCA, but were a reflection of the Debtors' efforts to negotiate a consensual plan that could be confirmed and result in a successful conclusion of the case."[16] In their investigation of the secured claim, A&R determined that because conditions to the release were never satisfied, GCA had a colorable argument that the release of the security was not effective. Furthermore, A&R confirmed that GCA retained possession of the pledged shares of AIPK stock, which was the basis for GCA's purported security interest.

A&R, in a strategic move, decided not to challenge the validity of GCA's security interest because of the expense to the estate of litigating that issue. Instead, A&R chose to negotiate with GCA and other creditors in order to conserve estate assets, ensure GCA's support, and increase the likelihood of putting forward a confirmable plan. As noted by the Bankruptcy Judge, the Bankruptcy

---

[15] Id.

[16] Memorandum Ruling, p. 19.

Code is structured to encourage a consensual plan process.[17] We find no error in the Bankruptcy Judge's ruling as to this issue.

After reviewing the arguments of the parties and considering the evidence submitted at the trial, we affirm the Bankruptcy Court's ruling which held that Adams and Reese, LLP did not hold or represent an adverse interest to the bankruptcy estate by receiving Two Hundred Thousand Dollars ($200,000.00) from the debtor's largest creditor, GCA.

## II. Did the Bankruptcy Court err in holding Adams and Reese LLP was disinterested in light of its connections to and relationships with GCA?

The Trustee maintains that A&R lost its impartiality prior to the filing of the bankruptcy when it participated in the preparation and backdating of a Dividend Assignment. The purpose of the Dividend Assignment was to grant GCA a security interest. The Trustee complains that A&R knew that such interest would be subject to avoidance because allegedly it was granted to secure an antecedent debt within ninety days of the bankruptcy filing. Therefore, the Trustee states that the document was backdated to prior than ninety days before the bankruptcy filing.

The Trustee argues that GCA was paying A&R $200,000 and obtaining a commitment from A&R and the Debtor that they would not contest GCA's lien and would only file a plan consistent with GCA's interest. Thus, A&R allegedly had a personal interest which could be reflected in their decisions concerning matters of the estate. The Trustee complains that A&R did not investigate the validity of the security interest claimed by GCA even though it knew there was a release of its lien against AIPK stock executed in January 2004 by GCA. The Trustee also complains that A&R

---

[17] Citing In re Kellogg Square Partnership, 160 B.R. 336 (Bankr. D. Minn. 1993); In re Sentinel Management Group, Inc., 398 B.R. 281 (Bankr. N.D. Ill. 2008).

knew the Dividend Assignment was backdated and unperfected, but took no legal action.

With respect to the Dividend Assignment, the Bankruptcy Judge opined as follows:

> The Trustee relies heavily on a June 28, 2005, internal Adams & Reese e-mail authored by Dean Ferguson, who voices serious concerns about the AIPC bankruptcy case. (Exh. P-1). One of those concerns was the validity of GCA's security interest. The Trustee contends that Adams & Reese purposefully ignored the grounds for a challenge to that security interest. While the record reflects that the Debtors may have had colorable grounds to challenge GCA's security interest, the record also shows that GCA had a colorable argument that its security interest was valid because the release was ineffective. In addressing the June 28th e-mail and the question of GCA's security interest at trial, Mr. Ferguson testified that regardless of whether GCA was treated as secured or unsecured, GCA was the largest creditor in the case and "the only way to make sure that other creditors received something as well and had the potential to get paid was to, in my view, to cut a deal that made sense for everyone ... [I]f we had to litigate against GCA like we were litigating against Halifax, there wasn't going to be anything for anybody." (3 Tr. 25-26). In other words Adams & Reese had to consider the cost of litigating GCA's claim and whether litigating this claim was in the best interest of the estate. Adams & Reese and the Debtors ultimately determined that a consensual plan process -- not litigation -- was in the best interest of the estate. In hindsight, Adams & Reese and the Debtors may have had other options. However, the course they ultimately chose does not amount to a breach of their duties to the estate, nor does it reflect a disqualifying interest or conflict.

A&R investigated the security interest and provided its opinion to the Equity Committee. A&R notes that Mr. Ferguson testified that he personally saw the AIPK stock certificate and verified that it was held by GCA, a fact which informed his opinion of the validity of GCA's collateral position.[17] The Equity Committee ultimately concluded that it was in its own best interest to settle with GCA after raising its concerns about both GCA and A&R, and after reviewing relevant documents, deposing AIPC and Mr. Fitzpatrick, and GCA. As noted by A&R, settling with GCA, as opposed to continuing to challenge its security interest was a litigation strategy of the Equity

---

[17] (Tr. Vol. 3 p. 80).

Committee, just as it was a litigation strategy for A&R and AIPC.

The Trustee further asserts that A&R's duty of loyalty to the estate became diluted when it encouraged GCA to file a motion to lift the automatic stay to foreclose on the Debtor's primary asset and then draft GCA's motion. The Trustee complains that this litigation strategy put the estate at risk of losing its most valuable asset. The Bankruptcy Court recognized A&R's role in drafting the motion to lift stay and noted that it was drafted to help overcome a stalemate in negotiations with the Equity Committee, but was never filed. GCA ultimately did file a motion for relief, but that particular motion was drafted and filed by its own bankruptcy counsel. The Bankruptcy Court determined that there was no evidence that the estate was prejudiced by A&R's actions with respect to GCA. After considering the totality of the circumstances, the court concluded that A&R's conduct did not reflect a disqualifying bias in favor of any one creditor or constituency. The Trustee has not persuaded this court that the Bankruptcy Court erred as to fact or law. Accordingly, we affirm the Bankruptcy Court's ruling that A&R was disinterested based on its connections and relationship with GCA.

### III. Did the Bankruptcy Court err in holding Adams and Reese, LLP was disinterested in light of it advising the Debtor to mischaracterize pre-petition payments to officers and directors?

The Trustee maintains that the Bankruptcy Court's findings are incorrect with respect to A&R "mischaractering" pre-petition payments to officers and directors as retention payments for future services. The Court found that:

> "the record does not reflect such a disqualifying interest. Adams & Reese's role in the transactions was limited to its retention as an escrow agent. It does not appear that Adams & Reese opined on the validity of the transactions. Even if Adams & Reese had offered an opinion in connection with the transactions, it is not clear that the opinion, standing alone, would give rise to a disqualifying conflict." (citations

omitted)

The Trustee refers us to the testimony of Mr. James Knight, former CEO of the Debtor who testified that A&R advised the Debtor to mischaracterize certain of the payments as retention payments for future services.[18] The Trustee argues that by advising the Debtor to "alter its books to protect directors and officers from avoidance actions",[19] it was acting contrary to the interests of the Debtor by engaging in and directing the Debtor to commit fraud, and creating a conflict for itself to represent the Debtor in pursuing avoidance actions to recover payments made to the directors and officers. Thus, the Trustee contends that A&R was disqualified pursuant to 11 U.S.C. § 327(a).

A&R points out that the Bankruptcy Court in response to a motion for summary judgment, determined that there was no breach of duty by A&R in view of Plaintiff's failure to present "substantial evidence . . . supporting causation..."[20] Furthermore, the Bankruptcy Courts found that with respect to A&R's role in the transactions, there was no disqualifying interest. The evidence showed that the Equity Committee and creditors knew that the AIPC estate did not intend to pursue the officer claims because the estate considered them meritless or without value. If the Equity Committee disagreed, they could have compelled the estate to pursue the claims or assumed the pursuit themselves; in December 2005, the Equity Committee threatened to do so, but never followed through.

AIPC management, the Equity Committee and A&R's decision not to pursue the claims was a strategic decision based upon consideration of the amount of money it would cost to litigate versus

---

[18] R. #12-12 (Tr. II) p. 162.

[19] Appellant brief, p. 19.

[20] AP Rec. Doc. 243, pp.2-4.

the amount that might be received if any award was potentially granted. Furthermore, the Bankruptcy Court's final conclusion was that there was no link between causation and any damages with respect to A&R's conduct, and that such conduct did not give rise to a disqualifying interest. In its Memorandum Ruling, the Bankruptcy Court relied on 11 U.S.C. § 1107(b) which provides that "a person is not disqualified for employment under Section 327 of this title by a debtor in possession solely because of such person's employment by or representation for the debtor before the commencement of the case." A professional may, however, be disqualified if the pre-petition work performed for the debtor gives rise to a disqualifying conflict under section 327(a). The Bankruptcy Court specifically found that A&R's role in the transactions was limited to its retention as an escrow agent and that it did not appear that A&R opined on the validity of the transactions. The Bankruptcy Court further opined that it was not clear that the relevant opinion, standing alone, would give rise to a disqualifying conflict.[22] The Trustee relies solely on Mr. Knight's testimony regarding the advice given to mischaracterize payments. However, without more, we cannot conclude that the Bankruptcy Judge erred in finding that A&R did not breach their duty, or that A&R was disinterested. Accordingly, we affirm the Bankruptcy Court's ruling as to this issue.

## IV. Did the Bankruptcy Court err in limiting the disgorgement to the amount of One Hundred Thirty-Five Thousand Dollars ($135,000.00)?

The Bankruptcy Court found that A&R's disclosures did not provide sufficient information about A&R's pre-petition contacts with the Debtor or GCA to satisfy the requirements of Bankruptcy Rule 2014(a). However, the Trustee complains that the court only disgorged $135,000.00 in fees as opposed to the entire amount of fees and expenses.

---

[22] See e.g. In re Westside Creek Ltd. Partnership, 93 B.R. 177, 179 (E.D. Ark. 1988).

14

A&R does not dispute that it did not fully comply with the disclosure requirements of Rule 2014(a). The Bankruptcy Court found that A&R failed to disclose (1) the source of the initial $200,000 retainer and the agreement between Debtors' and GCA that funded the retainer, (2) the existence and terms of the Pre-petition Agreement and A&R's role in the creation of the Dividend Assignment; and (3) A&R's pre-petition relationship with the Debtors, including its role as a neutral escrow agent in the pre-petition CGC transactions. The Bankruptcy Court noted the disclosures made by A&R that indirectly referred to these connections. The Court considered the following factors:

(1) whether the connections at issue would have created a disqualifying interest under section 327(a), (2) whether the failure to disclose was inadvertent or intentional, (3) the materiality of the information omitted, (4) counsel's efforts to correct the deficiency, and (5) the benefits provided to the estate by counsel.[22]

Considering these factors, the Bankruptcy Court concluded that the record did not support a finding that these violations were intentional, and the record did not reflect any prejudice or harm to the estate or to creditors as a result of A&R's violation of Rule 2014(a). The Court further remarked that A&R's efforts in the case resulted in the successful confirmation of a plan that provided for all secured and unsecured claims, as well as a distribution to equity (shareholders). Finally, the court found that A&R did not have a disqualifying conflict or interest. As such, the court concluded that total disgorgement and punitive sanctions was not warranted, and instead disgorged $135,000 in fees which was approximately 20% of the $678,936 in total fees awarded in the case.

The Trustee has failed to persuade us that the violations were intentional and/or that the

---

[22] Memorandum Ruling, p. 31.

Bankruptcy Court's ruling was in error in either fact or law. Accordingly, we affirm the Bankruptcy Court's ruling as to the disgorgement of fees.

**V. Did the Bankruptcy Court err in denying leave to the Trustee to amend his complaint to add claims for fraud, fraudulent inducement and conspiracy?**

The Trustee sought to amend his complaint to allege among other things, acts of fraud, fraud in the inducement, conspiracy, aiding and abetting and breach of fiduciary duty. The Bankruptcy Court held that the Trustee's claims, excluding the breach of duty claims, were precluded by entry of the order approving the compromise with GCA and the confirmation order. The Court further reasoned that the amendment was futile, would cause delay and be prejudicial. The Trustee maintains that the claims against A&R were not the subject matter of the motion to compromise the claims of GCA, and neither the Trustee nor A&R were parties to the motion to compromise. Thus, the Trustee argues that the confirmation order does not preclude these new claims against A&R.

The Bankruptcy Court considered the fact that neither A&R nor the Trustee were parties to the settlement between GCA and the Equity Committee, and concluded that the fraud and fraudulent inducement claims are essentially a collateral attack on the settlement and the plan, because they were based on the same factual allegations already litigated and resolved by GCA and the Equity Committee prior to confirmation.[23] The Court also reasoned that because the relevant parties were aware of the Trustee's allegedly newly discovered documents prior to the settlement and plan confirmation, the Trustee could not establish the reliance element of a fraudulent inducement claim. The Bankruptcy Court determined that allowing the amendment as to these claims would fundamentally alter the nature of the case in its last stages, noting that the proceeding was an action

---

[23] Memorandum Ruling, R. #11-16, p. 7.

for disgorgement based on an alleged failure to disclose a conflict of interest. Allowing the amendment would permit the Trustee to re-litigate the issue of GCA's secured claim, the propriety of the settlement between the Equity Committee and GCA, and the treatment of GCA's claim.

As noted by A&R, the Fifth Circuit has consistently denied efforts to amend complaints that attempt to revive matters previously resolved.[24] Furthermore, the Bankruptcy Court made detailed findings and concluded that the Trustee failed to meet his burden of proof on the conflict of interest and breach of duty claims, claims less serious than the Trustee's fraud based claims. Accordingly, we find no error in the Bankruptcy Court's ruling denying the Trustee's motion for leave to amend as to the fraud and fraud in the inducement claims, and we hereby affirm that ruling.

## CONCLUSION

For the reasons set forth above, the Rulings of the Bankruptcy Court are hereby **AFFIRMED. SO ORDERED.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 27th day of April, 2011.

*James T. Trimble*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[24] Martin'a Herend Imports, Inc. V. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 771 (5 th Cir. 1999)(where the court noted that the amendment was "merely attempting to argue the same theory that failed" in earlier litigation.)

17